## McCLUSKEY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. December 6, 1901.)

STREET RAILROADS—INJURY AT CROSSING—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

> In an action against a street car company for negligently causing the death of a pedestrian at a street crossing, evidence examined, and *held* insufficient to show such negligence in defendant as to sustain a verdict for plaintiff.

Appeal from trial term, New York county.

Action by John A. McCluskey as administrator of the estate of Charles McCluskey, deceased, against the Metropolitan Street Railway Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.

Daniel F. Kiely, for respondent.

INGRAHAM, J. The plaintiff's intestate was on the 11th of February, 1899, crossing the track of the defendant railway, about 8 o'clock in the evening, when he was struck by one of the defendant's cars, and sustained injuries which resulted in his death. The night was very cold, and there is evidence that at the time of the accident it was snowing. The car that struck the plaintiff's intestate was a south-bound car, upon the west track. The plaintiff's intestate attempted to cross the street from the west to the east, and as he stepped upon the track the car struck him. The plaintiff called as witnesses two policemen who were standing upon the northwest corner of Ninety-Second street and Lexington avenue. Officer Nevins testified on direct examination that he saw the plaintiff's intestate walking down on the southerly side of Ninety-Second street from Park avenue to the east; that he walked on the crossing; saw the car strike and knock the deceased down. The witness says:

"I noticed as he stepped on the track. At that time I did not exactly notice how far away the car was. The car might have been about in front of us. We were on the other side of the street. The front car was about even with the north cross walk. * * * I saw the car come along at the time I was standing there. I did not exactly see the man step on the track. I saw him coming down the street first. I saw the man step on the crossing next. Then he kind of paused. I did not take much notice to what he done, but he just about paused for to look around, like. The next thing, I see him go rolling in front of the car. At that time the front of the car was about even with this cross walk that is in front of us, across the street. I next saw the man rolling in front of the car by looking around. I did not notice the gripman do anything until he tried to brake up his car from hearing the sound. He started to do that after he had struck the man. At the time that I saw the car right on the cross walk, or about the cross walk, I did not see the gripman do anything, only just from hearing the noise of the brake. This was a very cold night, and snowing."

On cross-examination the witness testified that the car was brilliantly lighted; that he saw the plaintiff's intestate pause on the curb at the gutter; that the car was then coming in full sight, so that a man with his eyes open, with ordinary eyesight, could not fail to see it at that time; that when he stepped from the sidewalk down to the street the car was about opposite the north crossing of Ninety-Second street; that before the plaintiff's intestate had left the curbstone the car had about reached the northerly side of Ninety-Second street, opposite to where the witness was; that the distance from the curbstone to the westerly rail of the track on which the car was running was about 12 feet, and to reach the track the deceased had to walk that distance; in the meantime the car was coming in full sight; that when the deceased stepped upon the westerly rail of the westerly track, on which the south-bound car was coming, the car had got right onto him,—"It was right on top of him." Upon redirect examination counsel for the plaintiff endeavored to get the witness to say that when the deceased stepped on the track the car was at the

north crossing, but without success. The other witness for the plaintiff's intestate, Officer Doran, testified that he stood on the corner of the street, talking to the first witness; that he saw the deceased coming down on the south side of Ninety-Second street towards Lexington avenue; that as he came close to Lexington avenue he seemed to slacken his walk somewhat, and to pause around, to look to see if there were any cars coming up or down Lexington avenue. "He paused at the curbstone, as it were. He did not exactly stand. He sort of slackened his walk somewhat. He proceeded to cross Lexington avenue to the south side of Ninety-Second street. * * * At the time that McCluskey was a foot or two from the track at that time the front part of the car was coming down the avenue south of Ninety-Third street. In relation to the place where I was standing, it would probably be opposite me at that time. I refer to the time that he was stepping on the track. At that time, I say, the front of the car was about opposite me and Officer Nevins. Next I seen this man knocked down and dragged by the car for some distance down the avenue, and Officer Nevins and myself ran over, and we picked him up." Upon cross-examination the witness testified that at the time the deceased reached the westerly sidewalk of Lexington avenue the car was coming down the avenue, maybe two blocks above Ninety-Second street; that when the deceased left the curbstone at the corner of Ninety-Second street and Lexington avenue the car was leaving Ninety-Third street; that he started to walk across the avenue in an ordinary walk,—went across in a leisurely sort of way; that the car was then coming down the avenue, brilliantly lighted; that it was the only vehicle of any kind in the street at that time; that the car was running at the ordinary rate of speed; that it was the right or west side of the car that struck the deceased, and he fell on the west side of the track, but the witness did not see the deceased at the time when he put his foot on the track; that he took one step upon the track before he was hit, and then the car was on him. This was all the testimony produced by the plaintiff which tended to prove the defendant's negligence. The motorman of the car, who was called by the defendant, testified that at the time his car was crossing the north side of Ninety-Second street he reduced the speed of the car to about three miles an hour; that he saw the deceased near the lamp-post, on the sidewalk, and sounded his gong; that the deceased stepped down from the sidewalk to cross over the street; that the witness again rang his gong, and shouted to him, and also applied his brake to stop the car; that the deceased walked over towards the track, and paused just at the track; "Then, all of a sudden, when I was not more than three or four feet from him, he stepped directly in front of the car, and, of course, the car struck him and knocked him down;" that the car struck his knees; that he fell forward, with his head against the dashboard, and fell across the westerly rail; that the motorman then put on the brake, and stopped the car about six feet below the southerly crossing. Upon cross-examination the witness testified that he let go the cable, ready to make a stop on the north side of the street, expecting the deceased wanted to take the car. Several

other witnesses were called, not connected with the railroad, who corroborated this statement of the motorman. Glynn, who was a passenger upon the car, testified that he was seated at the front window on the west side of the car at the time of the accident; that when he first saw the deceased he was standing about four feet from the westerly rail, looking at the car; that the gripman had slackened the car, and just as the car was passing, or as the car got abreast of, him, he stepped in front of the car, and the front bumper of the car struck him around his knees; that, as he stood four feet west of the track, the witness saw that the deceased had his hand up to the side of his head, or was making a gesture towards the car; that at the time he made this gesture the car was about at the middle of the block, between the north and south crossing; that the deceased stepped on the track as the car was reaching the point; that when the car stopped the witness jumped off, and the rear end of the car was just upon the south cross walk of Ninety-Second street. The witness Rudden, called for defendant, testified that at the time of the accident he was five or ten feet from the deceased, walking up the west side of Lexington avenue; that when the car got to the north side of Ninety-Second street the deceased was then leaving the sidewalk to cross over; that he walked towards the car, stepped upon the track, and as he stepped upon the track the car struck him; that he saw the deceased move his head as if indicating to the car, and then put his hand over his ear, and when the car stopped the rear was upon the cross walk. There are other witnesses who gave substantially the same account of the occurrence. With the exception of the statement of these two police officers, the evidence of every person who saw the accident is uncontradicted that the deceased walked out to the track as though about to board the car, and then stepped upon the track in front of the car, and was injured. If this statement is true, it is clear that the motorman was not negligent, but that the accident was caused solely by the act of the deceased in stepping in front of the car; and the evidence of the police officers, taken as a whole, does not contradict this testimony of the defendant's witnesses. It is not disputed by any of the witnesses that the deceased was struck upon the west side of the track, and was between the west rail and the slot in the middle of the track when he was picked up after the accident. The police officer who testified that the car was at the north side of Ninety-Second street when the deceased stepped upon the track subsequently said that he did not see the deceased step on the track; and his cross-examination made it clear that what he intended to say was that when the deceased stepped off the sidewalk the car was on the north side of Ninety-Second street, in motion, going downtown, and that from the time the deceased walked the 12 feet between the curbstone and the track the car must have got very close to the south crossing. It is quite evident from the situation that the motorman was justified in assuming that the deceased wished to take the car. There is nothing in the testimony to show that he had reason to believe that the deceased would attempt to cross the track in front of the car, or that it was his duty to bring the car to a full stop before reaching the cross walk. If the car was

on the north side of Ninety-Second street when the deceased stepped upon the track, and the deceased, as all of the witnesses testified, was struck on the west side of the track just as he stepped upon the track, it would be necessary to assume that the deceased, when he stepped on the track, stopped until the car reached and struck him; yet there is not a witness that testified that the deceased stopped upon the track. It is impossible to reconcile the testimony given in the case by the police officers, as well as the testimony of the defendant's witnesses, with the statement that this car was on the north cross walk of the street at the time the deceased stepped on the track; and yet this is the only theory of the case that could justify a finding that the defendant was negligent. Here was a cold, snowy night. The deceased, crossing this track with his hand to his head or ears, stepped in front of the car and was struck. There is nothing in the testimony that is inconsistent with this statement, which is testified to by all of the witnesses produced by the defendant, and which is quite consistent with that of the police officers called by the plaintiff. I think it is quite clear that this testimony was insufficient to justify a verdict for the plaintiff.

The judgment and order appealed from must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.